UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Biopolymer Engineering, Inc., and
Massachusetts Institute of Technology,

   Plaintiffs,

v.                Civil No. 05-2972 (JNE/JJG)
                   ORDER
Immudyne, Inc.,

    Defendant.

  Biopolymer Engineering, Inc. (Biopolymer), and Massachusetts Institute of Technology (MIT) assert claims against Immudyne, Inc., for patent infringement and violations of the Lanham Act and the Minnesota Deceptive Trade Practices Act (MDTPA). Relying primarily on judgments issued by a Texas state court, Immudyne moves for partial summary judgment. Specifically, Immudyne seeks summary judgment on two of Biopolymer's claims for patent infringement and on Biopolymer's claims for violations of the Lanham Act and the MDTPA. Immudyne also seeks summary judgment on Biopolymer and MIT's request for permanent injunctive relief. For the reasons set forth below, the Court grants in part and denies in part Immudyne's motion for partial summary judgment.

## I.   BACKGROUND

  The Court previously summarized events leading up to the judgments issued by the Texas state court. *Biopolymer Eng'g, Inc. v. Immudyne, Inc.*, Civ. No. 05-2972, 2007 WL 1175841 (D. Minn. Apr. 20, 2007). Briefly, on June 29, 1993, U.S. Patent No. 5,223,491 ('491 Patent) issued to Byron Donzis. Through a series of licenses, Donzis licensed the '491 Patent to Immudyne in December 1994. In October 1996, litigation involving Donzis, Immudyne, and others commenced in Texas state court. In October 1998, the Texas state court adopted a settlement

agreement (*McLaughlin* settlement agreement).  *See Donzis v. McLaughlin*, 981 S.W.2d 58, 65

(Tex. App. 1998) (reversing and remanding district court's order because it added terms beyond

scope of settlement agreement).  The *McLaughlin* settlement agreement "required certain

reaffirmations and representations to be made regarding certain patents and related technology

that were the subject of existing license agreements between the parties."  *Id.*

In the meantime, Donzis applied for and received three patents.  On November 19, 1996,

U.S. Patent No. 5,576,015 ('015 Patent) issued from Application No. 396,940.  U.S. Patent No.

5,702,719 ('719 Patent) and U.S. Patent No. 5,705,184 ('184 Patent) issued on December 30,

1997, and January 6, 1998, respectively, from divisional applications based on Application No.

396,940.

In February 1999, Immudyne commenced an action in Texas state court against Donzis

for breach of the *McLaughlin* settlement agreement.  On June 23, 2000, the Texas state court

entered final judgment, awarding Immudyne $600,000 plus pre- and post-judgment interest.

Approximately eighteen months later, on December 27, 2001, the Texas state court ordered

Donzis to assign his legal ownership interest in the '491 Patent, U.S. Patent No. 5,519,009 ('009

Patent), U.S. Patent No. 5,397,773 ('773 Patent), the '015 Patent, the '719 Patent, and the '184

Patent to Immudyne by December 31, 2001, to satisfy the judgment.  If Donzis failed to do so,

the Texas state court authorized a trustee to assign the patents to Immudyne.  In February 2002,

the trustee assigned the patents to Immudyne.  On April 11, 2002, the trustee's assignments of

the patents to Immudyne were recorded.

In the meantime, Donzis licensed and assigned the '015 Patent and the '719 Patent.  In

September 1999, Donzis licensed several patents, including the '015 Patent and the '719 Patent,

to Biopolymer.  A few months later, Biopolymer recorded the licenses.  On June 8, 2000, Donzis

assigned the '015 Patent and the '719 Patent to PSA Incorporated.  PSA recorded the

assignments on July 6, 2000.  Approximately seventeen months later, Biopolymer and PSA

entered into an Asset Purchase Agreement.  The assets bought by Biopolymer included the '015

Patent and the '719 Patent.  Biopolymer recorded the assignments in June 2002.

In October 2005, Immudyne brought an action for declaratory judgment in Texas state

court against Donzis, PSA, and Biopolymer (2005 Texas Action).  In its petition, Immudyne

sought the following declaration:

> A declaration that the [*McLaughlin* settlement agreement] refers to and
> includes U.S. Patents Numbers 4,138,479 and 5,223,491 and the patents
> originating from these patents, including, but not limited to U.S. Patent Nos.
> 5,519,009; 5,397,773; 5,576,015; 5,702,719; 5,705,184; Europatent No. 0,500,718
> B1; and CA 2072145C, and therefore ImmuDyne is the owner and sole and
> exclusive worldwide licensee for U.S. Patents Numbers 4,138,479 and 5,223,491
> and the patents originating from these patents, including, but not limited to U.S.
> Patent Nos. 5,519,009; 5,397,773; 5,576,015; 5,702,719; 5,705,184; Europatent
> No. 0,500,718 B1; and CA 2072145C, and all improvements on said patents and
> related technology.

In April 2006, the Texas state court granted Immudyne's motion for partial summary judgment

and declared that Immudyne "has an exclusive license to U.S. Patent Number 5,519,009; U.S.

Patent Number 5,397,773; U.S. Patent Number 5,576,015; U.S. Patent Number 5,702,719; and

U.S. Patent Number 5,705,184."  In September 2007, the Texas state court granted Biopolymer's

Motion to Sever Summary Judgment Order such that the April 2006 order became final and

appealable.  In January 2008, the case was tried to a jury.  In March 2008, the Texas state court

issued a Final Judgment that provides in part:

> IT IS HEREBY DECLARED that the Order dated December 27, 2001, . . .
> assigned ownership of United States Patent Nos. 5,223,491, 5,519,009, 5,397,773,
> 5,576,015, 5,702,719, and 5,705,184 and Europatent 0,500,718 B1 and Canadian
> Patent 2072145 from Byron A. Donzis and PSA, Inc. to ImmuDyne, Inc. on
> December 27, 2001;
>
> IT IS HEREBY DECLARED that Biopolymer Engineering, Inc. d/b/a
> Biothera did not acquire United States Patent Nos. 5,519,009, 5,397,773,

5,576,015, 5,702,719, and 5,705,184 and Europatent 0,500,718 B1 and Canadian Patent 2072145 from Byron A. Donzis and PSA, Inc. in good faith, for valuable consideration and without prior notice of ImmuDyne, Inc.'s interest;

IT IS HEREBY DECLARED that Biopolymer Engineering, Inc. d/b/a Biothera pleaded and was given the opportunity to submit evidence and argue to the Court the affirmative defenses that a certain Judgment entered on or about October 19, 1998, . . . was void; that it was an improper party because it was not a party to either the judgment or the underlying rule 11 agreement that form, in part, the basis for ImmuDyne's request for declaratory relief; that ImmuDyne's claims are barred in whole or in part by the applicable statues [sic] of repose and/or limitations; that declaratory judgment in this cause was improper because declaratory relief was sought to interpret a prior judgment in the absence of a justiciable controversy; and that it was a bona fide purchaser as set forth in 35 U.S.C. § 261.  The Court denies any relief sought by Defendants pursuant to these affirmative defenses.

. . . .

Based upon the pleadings, evidence, argument, the jury's findings, and the foregoing declarations, it is hereby

ORDERED, ADJUDGED AND DECREED that ImmuDyne, Inc. owns United States Patent Nos. 5,223,491, 5,519,009, 5,397,773, 5,576,015, 5,702,719, and 5,705,184 and Europatent 0,500,718 B1 and Canadian Patent 2072145; it is

ORDERED, ADJUDGED AND DECREED that the assignments of United States Patent Nos. 5,519,009, 5,397,773, 5,576,015, 5,702,719, and 5,705,184 and Europatent 0,500,718 B1 and Canadian Patent 2072145 made pursuant to the Asset Purchase Agreement by and among Biopolymer Engineering, Inc. d/b/a Biothera, Byron A. Donzis, PSA, Inc. and Immune Health Systems, Inc. are void.

Relying primarily on the judgments issued in the 2005 Texas Action, Immudyne now moves for partial summary judgment.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify

"those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.     Patent infringement

Immudyne contends that it is entitled to summary judgment on Biopolymer's claims for infringement of the '015 Patent and the '719 Patent because the Texas state court determined that Immudyne has a license to the patents and this Court must afford the Texas state court's judgment preclusive effect. Biopolymer contends that neither claim preclusion nor issue preclusion applies.

"The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect those judgments would be given in the courts of the states rendering them and to implement the preclusion rules of the state issuing the judgment." *Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 458 F.3d 733, 737 (8th Cir. 2006) (citations omitted). Thus, the Court applies Texas law to determine the preclusive effect of the Texas state court's judgments. *See Myer v. Americo Life, Inc.*, 469 F.3d 731, 733 n.7 (8th Cir. 2006) ("Texas law determines the preclusive effect of the Texas state court's judgment."); *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1343 (Fed. Cir. 1999) ("Texas law controls the issue of res judicata, as required by the 'full faith and credit' statute.").

The Court first considers claim preclusion:

> Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. It requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.

*Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (citation omitted). Where, as here, state preclusion law includes a requirement of prior jurisdictional competency, a state judgment will not have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985); *see Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 789-92 (E.D. Tex. 2000) ("Thus, it appears that Texas' highest court adheres to the rule that claim preclusion does not foreclose a claim beyond the jurisdiction of the court rendering judgment."); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992) ("A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit."); *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 511 (Tex. App. 2006) ("However, res judicata does not bar a claim if the court rendering judgment in the initial suit lacked subject-matter jurisdiction over the claim."), *rev. denied* (Tex. Sept. 28, 2007). Because Biopolymer's claims for patent infringement are within the exclusive jurisdiction of the federal courts, *see* 28 U.S.C. § 1338(a) (2000), the Court rejects Immudyne's assertion that claim preclusion applies to Biopolymer's claims for patent infringement.

The Court next considers whether issue preclusion or collateral estoppel applies. "The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding

relitigation of issues." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

To assert collateral estoppel, Immudyne must establish that "(1) the facts sought to be litigated in

the second action were fully and fairly litigated in the first action; (2) those facts were essential

to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."

*Id.*  In support of its motion for partial summary judgment in the 2005 Texas Action, Immudyne

argued to the Texas state court that it had exclusive licenses to the '015 Patent and the '719

Patent pursuant to the *McLaughlin* settlement agreement.  Biopolymer raised several arguments

in opposition, including (1) the *McLaughlin* settlement agreement was void; (2) the premise of

Immudyne's motion conflicted with decision of the Texas Court of Appeals in *Donzis v.*

*McLaughlin*; and (3) factual disputes precluded summary judgment.  As noted above, the Texas

state court granted Immudyne's motion for partial summary judgment and later granted

Biopolymer's motion to sever.  After trial, the Texas state court denied Biopolymer's affirmative

defenses.  On this record, there is no dispute that the facts of whether Immudyne has licenses to

the '015 Patent and the '719 Patent were fully and fairly litigated before the Texas state court,

that those facts were essential to the Texas state court's judgments, and that Biopolymer and

Immudyne were adversaries before the Texas state court.

Biopolymer nevertheless asserts that issue preclusion does not apply because it will

appeal the judgments of the Texas state court.  The Court rejects Biopolymer's argument.  *See*

*Myer*, 469 F.3d at 733 (stating appeal of judgment does not affect judgment's finality under

Texas law); *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (holding that "a

judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal

unless what is called an appeal actually consists of a trial de novo'").

Having concluded that issue preclusion applies, the Court turns to whether Immudyne is entitled to summary judgment.  License is a defense to patent infringement.  *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878 (Fed. Cir. 1995).  As the alleged infringer, Immudyne has the burden of establishing its license.  *See id.*  Giving preclusive effect to the Texas state court's judgment, the Court concludes that Immudyne's licenses to the '015 Patent and the '719 Patent render summary judgment in Immudyne's favor on Biopolymer's claims for infringement of these patents appropriate.

**B.     Lanham Act and MDTPA**

Biopolymer claims that Immudyne violated the Lanham Act and the MDTPA by falsely asserting ownership of the '009 Patent, the '773 Patent, the '491 Patent, the '015 Patent, the '719 Patent, and the '184 Patent on Immudyne's website.  As noted above, the Texas state court declared that "the Order dated December 27, 2001, . . . assigned ownership of United States Patent Nos. 5,223,491, 5,519,009, 5,397,773, 5,576,015, 5,702,719, and 5,705,184 . . . from Byron A. Donzis and PSA, Inc. to ImmuDyne, Inc. on December 27, 2001."  The Texas state court also decreed that ImmuDyne "owns United States Patent Nos. 5,223,491, 5,519,009, 5,397,773, 5,576,015, 5,702,719, and 5,705,184."  For essentially the same reasons set forth above, the Court concludes that issue preclusion prevents Biopolymer from relitigating here the issues of Immudyne's ownership of the '009 Patent, the '773 Patent, the '491 Patent, the '015 Patent, the '719 Patent, and the '184 Patent.[1]  Since the statements that form the basis of Biopolymer's claims under the Lanham Act and the MDTPA are not false, the Court concludes that Immudyne is entitled to summary judgment on these claims.  *See United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998) (Lanham Act); *Rainbow Play Sys., Inc. v.*

---

[1]      In light of this conclusion, the Court need not consider whether claim preclusion applies to Biopolymer's Lanham Act and MDTPA claims.

*GroundScape Techs., LLC*, 364 F. Supp. 2d 1026, 1032 (D. Minn. 2005) (Lanham Act and MDTPA).

**C.     Permanent injunction**

In light of the dismissals of Biopolymer's claims for infringement of the '015 Patent and the '719 Patent and for violations of the Lanham Act and MDTPA, four claims for patent infringement remain in this action.  Immudyne maintains that the Court should not award permanent injunctive relief related to these claims.  In the absence of a determination of Immudyne's liability for infringement of the four patents, consideration of whether to issue a permanent injunction is premature.  The Court denies this part of Immudyne's motion.  *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008) (noting district courts' "broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them").

### III.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.     Immudyne's motion for partial summary judgment [Docket No. 140] is GRANTED IN PART and DENIED IN PART.

2.     Counts I, II, VII, and VIII of Biopolymer and MIT's Second Amended Complaint [Docket No. 30] are DISMISSED WITH PREJUDICE.

Dated:  May 27, 2008

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge